```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 10-3228(DSD/TNL)
```

Barbara Kelly,

       Plaintiff,

v.                                                        **ORDER**

Fairon & Associates, d/b/a
LoanNow Financial Corp. LLC;
Chase Home Finance, LLC;
Aurora Bank, FSB; Aurora
Loan Services, LLC; John
Doe 1; John Doe 2; John Doe 3;
John Doe 4,

       Defendants.

    Jane N.B. Holzer, Esq. and Housing Preservation Project,
    570 Asbury Street, Suite 105, St. Paul, MN 55104, counsel
    for plaintiff.

    Curtis D. Ripley, Esq., Monica L. Davies, Esq., Jenifer
    L. Kopischke, Esq. and Leonard, Street and Deinard, PA,
    150 South Fifth Street, Suite 2300, Minneapolis, MN 55402
    and Christina M. Weber, Esq. and Wilford, Geske & Cook,
    PA, 8425 Seasons Parkway, Suite 105, Woodbury, MN 55125,
    counsel for defendants.


This matter is before the court upon the motion for partial summary judgment by plaintiff Barbara Kelly. Based on a review of the file, record and proceedings herein, and for the following reasons, the court denies the motion.


**BACKGROUND**

This mortgage dispute arises out of a refinanced-mortgage loan from defendant Fairon & Associates, d/b/a LoanNow Financial Corp.,

LLC (LoanNow Financial) to Kelly. On November 23, 2005, LoanNow Financial and Kelly executed two promissory notes in exchange for two mortgages, both for the real property located at 6621 10th Avenue South, Richfield, Minnesota 55423 (the Property). See Third Am. Compl. ¶¶ 11, 35, 37. The two notes had a combined principal balance of $270,000. Id. ¶¶ 35, 37.

On December 8, 2009, Kelly sent a Qualified Written Request (QWR) to defendant Chase Home Finance, LLC (Chase). Id. ¶¶ 53-55. Chase responded, sending Kelly copies of the notes, security instruments, HUD-1 settlement statement, good faith estimate, truth-in-lending statement, loan application, appraisal, right to cancel, loan transaction histories and escrow analysis statements. See ECF No. 60, Ex. D. Chase did not include the "full name, address, and phone number of the current holder of the mortgages and notes including the name, address and phone number of any trustee or fiduciary." Third Am. Compl. ¶ 58. Kelly sent a second QWR on June 7, 2010. See id. ¶ 60. Chase did not provide any new information in its June 18, 2010, response. Id. ¶ 61.

On June 30, 2010, Kelly brought suit against BNC Mortgage Inc. (BNC); LoanNow Financial; Chase; Mortgage Electronic Registration Systems, Inc. (MERS); Aurora Bank, FSB; and Aurora Loan Services, LLC, alleging violations of the Real Estate Settlement Procedures Act (RESPA), the Truth in Lending Act (TILA), the Minnesota Deceptive Trade Practices Act and the Minnesota Consumer Fraud Act.

2

Kelly also seeks to avoid the contract under several contract theories and requests a declaration that defendants have failed to record assignments of the mortgage notes.[1]  In the present motion, Kelly moves for partial summary judgment as to the RESPA and TILA claims against Chase.

## DISCUSSION

### I.  Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party.  See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex v. Catrett, 477 U.S. 317, 324 (1986).  Moreover, if a plaintiff cannot support each essential

---

[1] Kelly filed a third amended complaint on September 9, 2011. Neither BNC nor MERS were listed as defendants in this complaint.

element of his claim, the court must grant summary judgment, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II.  RESPA**

Congress enacted RESPA to create "significant reforms in the real estate settlement process" and to insure that consumers were "provided with greater and more timely information on the nature and costs of the settlement process and protected from unnecessarily high settlement charges." 12 U.S.C. § 2601(a). RESPA also applies to the servicing of federally related mortgage loans. See id. § 2605(e).

**A.  QWR Request**

RESPA requires servicers to provide written responses to a QWR[2] seeking "information *relating to the servicing of [a] loan*." Id. § 2605(e)(1)(A) (emphasis added). Kelly argues that Chase violated RESPA by failing to disclose the identity of the note holder and master servicer.[3] Chase argues that these requests do not relate to the servicing of Kelly's loan.

---

[2] A QWR is a written correspondence that "(I) includes ... the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Chase does not dispute that Kelly's QWR request was properly formatted and delivered.

[3] There is often more than one servicer on the same note. A master servicer "may actually perform the servicing itself or may do so through a subservicer." 24 C.F.R. § 3500.21(a).

Under RESPA, "servicing means receiving any scheduled periodic payments from a borrower ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." Id. § 2605(i)(3) (internal quotation marks omitted). The plain language of the statute defines servicing in terms of receipt of payments from a borrower and making payments of principal and interest. Kelly argues that the Department of Housing and Urban Development (HUD) suggests a different meaning. Kelly notes that HUD, in response to a public comment suggesting that QWRs be limited to assertions of error and inquiries about payments, responded that "[t]he statute encompasses all information related to the servicing of a mortgage loan and does not restrict subject matter to questions concerning the transfer of servicing, installment payments, or account balances." RESPA; Regulation X; Escrow Accounting Procedures; Technical Correction, 59 Fed. Reg. 65,442, 65,445 (Dec. 19, 1994). The response, however, merely explains that servicing relates to more than just errors and payment records; it does not provide guidance about whether the identity of a note holder or master servicer is

related to the servicing of a mortgage. Kelly's argument is unpersuasive,[4] and is contradicted by the plain language of the statute.

Requests for information pertaining to the identity of a note holder or master servicer do not relate to servicing. See Dietz v. Beneficial Loan & Thrift Co., No. 10-3752, 2011 WL 2412738, at *4 (D. Minn. June 10, 2011) (noting that "information related to ... loan ownership and the contractual relationships between [the note holder][5] and other companies" does not relate to servicing); Devary v. Countrywide Home Loans, Inc., 701 F. Supp. 2d 1096, 1108 (D. Minn. 2010) (explaining that "ownership of the loan" does not appear to relate to servicing).[6] Other courts addressing the issue agree. See, e.g., Junod v. Dream House Mortg. Co., No. CV 11-7035,

---

[4] Moreover, Kelly's argument is undercut by the next sentence of the HUD explanation. It provides an example of a valid QWR request: "[A] written inquiry concerning a collection for or disbursement from an escrow account." See RESPA; Regulation X; Escrow Accounting Procedures; Technical Correction, 59 Fed. Reg. at 65,445. The example in no way relates to the identity of a note holder or master servicer.

[5] Kelly argues that Dietz does not discuss master servicers. See Pl.'s Reply Mem. 5 n.1. The court disagrees. The background section in Dietz notes that the QWR requested "certified copies of various agreements between [defendant] and other financial entities that relate to Plaintiffs' account (i.e., *Master Pooling and Service Agreements*, recourse agreements, trust agreements)." Dietz, 2011 WL 2412738, at *1 (emphasis added).

[6] Kelly argues that the RESPA analysis in Devary was dicta and is unpersuasive. See Pl.'s Reply Mem. 5. Although dicta, Devary is persuasive, because it outlines how the court would have ruled had the motion to dismiss properly been before the court. See Devary, 701 F. Supp. 2d at 1106-08.

6

2012 WL 94355, at *3-4 (C.D. Cal. Jan. 5, 2012); Obot v. Wells Fargo Bank, N.A., No. C11-00566, 2011 WL 5243773, at *2 (N.D. Cal. Nov. 2, 2011); Patton v. Ocwen Loan Servicing, LLC, No. 6-11-cv-445-Orl-19, 2011 WL 1706889, at *3 (M.D. Fla. May 5, 2011); Petracek v. Am. Home Mortg. Servicing, No 2:09-cv-001403, 2010 WL 582113, at *3 (E.D. Cal. Feb. 11, 2010). But see Stephenson v. Chase Home Fin. LLC, No. 10cv2639-L, 2011 WL 2006117, at *3-4 (S.D. Cal. May 23, 2011); Selby v. Bank of Am., Inc., No. 09cv2079, 2011 WL 902182, at *5 (S.D. Cal. Mar. 14, 2011) (identifying note holder "arguably" relates to servicing); Woods v. Greenpoint Mortg. Funding, Inc., No. 2:09-1810, 2010 WL 1729711, at *7 (E.D. Cal. Apr. 28, 2010). Therefore, Chase did not violate RESPA by failing to provide information relating to the note holder or master servicer.

### B. Damages

Chase also argues that summary judgment is not warranted because Kelly has not proven damages. The court agrees. "An individual plaintiff's damages for violations of RESPA's QWR requirements are limited to 'actual damages' and, 'in the case of a pattern or practice of noncompliance,' up to $1,000 in statutory damages." Hintz v. JPMorgan Chase Bank, N.A., No. 10-2825, 2011 WL 579339, at *9 (D. Minn. Feb. 8, 2011) (quoting 12 U.S.C. § 2605(f)(1)); accord Dietz, 2011 WL 2412738, at *4-5; Melillo v. GMAC Mortg., LLC, No. 10-3392, 2011 WL 96629, at *3 (D. Minn. Jan.

11, 2011); Ricotta v. Ocwen Loan Servicing, LLC, No. 06-cv-01502, 2008 WL 516674, at *5 (D. Colo. Feb. 22, 2008) ("[A] RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation."); see also Solan v. Everhome Mortg. Co., No. 10-CV-2280-H, 2011 WL 456013, at *3 (S.D. Cal. Feb. 3, 2011) (collecting cases).

Despite this majority viewpoint, Kelly asks the court to postpone the calculation of damages, but declare that Chase violated REPSA.[7] See Pl.'s Reply Mem. 9-10. Although the court in Gewecke v. U.S. Bank, N.A., No. 09-1890, 2010 WL 3717273, at *20-21 (June 16, 2010), adopted by 2010 WL 3717325 (Sept. 14, 2010), took such action, it also stated that "the issue of any damages ... raises genuine issues of material fact that cannot be resolved upon a motion for summary judgment." Id. at *21. Gewecke states that proving damages is an element of a RESPA claim. Kelly has not proven actual or statutory damages, and for this additional reason, summary judgment is not warranted.

---

[7] The memorandum in support of partial summary judgment states that "RESPA ... does not require proof of damages as an element of liability." Pl.'s Mem. Supp. 10. Kelly appears to back away from this assertion in her reply memorandum.

Alternatively, Kelly argues that she has carried her burden as to proving damages. See Pl.'s Reply Mem. 10-12. The court disagrees. Vague allegations of time taken away from work to apply for loan modifications and unnecessary interest and fees is not sufficient to prove this element of a RESPA claim.

## III.  TILA

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available ... and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The court broadly construes TILA in favor of consumers. Rand Corp. v. Yer Song Moua, 559 F.3d 842, 847-48 (8th Cir. 2009).

Section 1641(f) requires that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."  See 15 U.S.C. § 1641(f).  TILA, however, only provides a private cause of action against "*creditor[s]* who fail[] to comply with any requirement imposed under ... section 1635 of this title [and] subsection (f) or (g) of section 1641." Id. § 1640(a) (emphasis added). Kelly argues that the reference in § 1640(a) to the servicer reporting obligation under § 1641(f)(2) evidences an intent to hold servicers liable. The court disagrees.

The crux of Kelly's argument is that § 1640(a) was amended in 2009 to include a cross-reference to § 1641(f), thereby creating servicer liability. See Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, § 404(b), 123 Stat. 1632, 1658. Kelly claims that a servicer cause of action must exist, because otherwise the amendment would be without effect. As other courts

have noted, however, this amendment may have been an attempt to hold creditors vicariously liable for servicer violations of § 1641(f)(2).[8]  See e.g., Holcomb v. Fed. Home Loan Mortg. Corp., No. 10-81186-CV, 2011 WL 5080324, at *6 (S.D. Fla. Oct. 26, 2011); Consumer Solutions REO, LLC v. Hillery, No. C-08-04357, 2010 WL 144988, at *3 (N.D. Cal. Jan. 8, 2010) ("There is a fair chance Congress intended vicarious liability ...."). Further, had Congress intended to hold servicers liable for violations under § 1641(f)(2), it would have included the word "servicer" in § 1640(a). Instead, § 1640(a) notes liability only for creditors, and § 1641 makes clear that a servicer "shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation." 15 U.S.C. § 1641(f)(2).

Moreover, this interpretation is consistent with a majority of courts that hold that TILA does not allow a private cause of action against servicers. See e.g., Sherrell v. Bank of Am., N.A., No. CV F 11-1785, 2011 WL 6749765, at *11-12 (E.D. Cal. Dec. 22, 2011); Holcomb, 2011 WL 5080324, at *6; Consumer Solutions REO, LLC, 2010 WL 144988, at *3; Garcia v. Fannie Mae, 794 F. Supp. 2d 1155, 1172

---

[8] The issue of vicarious-creditor liability is not before the court.  The court does not suggest that future cases would support a cause of action for vicarious liability under § 1641(f)(2).

(D. Or. 2011); Selby, 2011 WL 902182, at *6; Ording v. BAC Home Loans Servicing, LP, No. 10-10670, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011) ("[L]iability for violations of TILA rests squarely and solely with creditors.") (citation omitted). But see Stephenson, 2011 WL 2006117, at *3; Sam v. Am. Home Mortg. Servicing, No. S-09-2177, 2010 WL 761228, at *3 (E.D. Cal. Mar. 3, 2010). Kelly acknowledges this majority viewpoint, but instead argues that "these cases are the result of courts conflating TILA's provisions governing creditors with its provisions governing servicers." Pl.'s Mem. Supp. 14. The court disagrees and is persuaded that each case cited thoroughly distinguishes the differing obligations for servicers and creditors under TILA. There is no evidence that Chase is anything other than the servicer of Kelly's mortgage. Therefore, summary judgment in Kelly's favor is not warranted as to the TILA claim.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the plaintiff's motion for partial summary judgment [ECF No. 52] is denied.

Dated:  February 3, 2012

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court